IN THE SUPREME COURT
STATE OF NORTH DAKOTA

2025 ND 139

Alan Juliuson,                                                  Plaintiff and Appellant

v.

David Johnson, Barbara R. Johnson,
Trustee of the Barbara R. Johnson Revocable Trust;
Robert D. Mackie, Trustee of the
Robert D. Mackie Trust; Edwin Mackie;
Keith Johnson and Douglas Johnson,
Co-Trustees of the Dwight Warren & Jo Ellen Johnson
Family Trust; Bjerke Holdings, LLLP;
and Farmers National Company,                      Defendants and Appellees

No. 20240338

Appeal from the District Court of Steele County, East Central Judicial District,
the Honorable Tristan J. Van de Streek, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Matthew D. Kirschenmann, Fargo, ND, for plaintiff and appellant.

Michelle K. Kuhl (argued) and Joseph A. Wetch (appeared), Minneapolis, MN,
for defendants and appellees David Johnson; Barbara R. Johnson, Trustee of the
Barbara R. Johnson Revocable Trust; Robert D. Mackie, Trustee of the Robert D.
Mackie Trust; Edwin Mackie; Keith Johnson and Douglas Johnson, Co-Trustees
of the Dwight Warren and Jo Ellen Johnson Family Trust.

Joshua A. Swanson (argued) and Jeffrey P. Sprout (on brief), Fargo, ND, for defendant and appellee Bjerke Holdings LLLP.

Sean A. Minahan (argued), Omaha, NE, and Scott J. Landa (appeared), Grand Forks, ND, for defendant and appellee Farmers National Company.

**Crothers, Justice.**

[¶1]   Alan Juliuson appeals from a district court's judgment following a jury trial dismissing his claims with prejudice. We affirm the district court's denial of Juliuson's Rule 50 motion regarding his right to renew the lease and that he preempted Johnson's sale of the property to Bjerke; affirm the court's order dismissing Juliuson's claim for specific performance; affirm the court's order granting Johnson's Rule 50 motion and not separately instructing the jury on claims for breach of the implied covenant of good faith and fair dealing and deceit claim. The district court's judgment is affirmed.

I

[¶2]   Juliuson rented three tracts of farmland from a number of owners, collectively referred to as Johnson, for over 40 years. In 2018, Juliuson contracted to farm the property until December 2021. The lease included an option to renew and a right of first refusal to purchase the property. Towards the end of the lease, Juliuson stated he was interested in purchasing the property but would like to continue renting a few more years before purchasing. Johnson sent Juliuson a proposed renewal lease that substantially increased the rent, removed the right of first refusal, and included a provision that the lease terminated if the property was sold to a new owner. Juliuson never responded to Johnson's proposed lease terms. In December 2021, Juliuson offered to purchase the property. The offer price was identified in both parties' briefs as $1.485 million. In January 2022, Johnson rejected Juliuson's offer and sold the land to Bjerke Holdings, LLLP for $1.626 million. Farmers National Company (FNC) assisted Bjerke in purchasing the property.

[¶3]   In June 2022, Juliuson sued Johnson claiming breach of contract, breach of implied covenant of good faith and fair dealing, declaratory judgment that Johnson's contract with Bjerke is void, reformation, specific performance, unlawful sales practices under N.D.C.C. § 51-15-02, intentional interference with a contract, and deceit. In the same action Juliuson sued Bjerke for declaratory

judgment that Johnson's contract with Bjerke is void, specific performance, unlawful sales practices under N.D.C.C. § 51-15-02, intentional interference with a contract, unjust enrichment/quantum meruit, breach of contract for fall expenses, and deceit. Juliuson sued FNC for assisting Bjerke's acquisition of the property, asserting claims of unlawful sales practices under N.D.C.C. § 51-15-02, intentional interference with a contract, and deceit.

[¶4]   The parties filed cross-motions for summary judgment. The district court granted and denied the motions in part. As to Bjerke, the court dismissed all claims except breach of contract and specific performance. As to FNC, the court dismissed all claims except intentional interference with contract. As to Johnson, the court dismissed the claims for reformation and unlawful sales practices, and reserved ruling on Juliuson's claim for specific performance. After a hearing in August 2024, the court dismissed Juliuson's specific performance claim against Johnson and Bjerke after concluding Juliuson failed to show why money damages were inadequate. Bjerke, joined by Johnson, renewed its motion for summary judgment for intentional interference with a contract, which the court granted. FNC also renewed its motion for summary judgment regarding the lone remaining claim against it for intentional interference of a contract. The court granted the motion. In August 2024, the case proceeded to a jury trial on the breach of contract claim against Johnson. The jury found no breach of the right of first refusal or the option to renew, and returned a verdict in favor of Johnson.

II

[¶5]   Juliuson makes a broad-based argument on appeal; however, not all the claims are properly before this Court. Specifically, the reformation, unlawful sales practices, intentional interference with a contract, unjust enrichment claims against Johnson, and the claims against FNC have not been briefed. Juliuson has only briefed the claim of specific performance against Bjerke. Issues not briefed are deemed abandoned. *Riskey v. Riskey*, 2018 ND 214, ¶ 15, 917 N.W.2d 488.

[¶6]   Juliuson has briefed and we will address his claims against Johnson that the district court erred in failing to grant his N.D.R.Civ.P. 50 motion; breach of

2

the implied covenant of good faith and fair dealing; deceit; and denial of specific performance.

## III

## A

[¶7]   Juliuson claims the jury's verdict finding a breach of contract claim is against the "weight of evidence." He argues "the manifest weight of the evidence" indicates waiver did not occur; therefore, "insufficient evidence" supports the jury's verdict that there was not a breach. Juliuson requests "this Court [] order a new trial based on insufficient evidence to support the Jury's Special Verdict."

[¶8]   Juliuson argues the jury verdict is against the "weight of evidence" and is supported by "insufficient evidence." These terms, while used synonymously in Juliuson's brief, are not equivalent. For claims that the jury's verdict was against the manifest weight of the evidence, this Court has stated "[t]he discretion of the trial court should be exercised in all cases in the interest of justice, and, where it appears to the judge that the verdict is against the weight of the evidence, it is his imperative duty to set it aside." *Cook v. Stenslie*, 251 N.W.2d 393, 396 (N.D. 1977) (cleaned up).

[¶9]   When the claim is that insufficient evidence supports the verdict, this Court has stated:

> We uphold special verdicts whenever possible and will set aside a jury's special verdict only if it is perverse and clearly contrary to the evidence. In reviewing a jury's findings of fact, we view the evidence in the light most favorable to the verdict and determine only if substantial evidence supports it. The credibility of expert witnesses and the weight to be accorded their testimony are matters to be determined by the jury. When the sufficiency of the evidence to support a jury verdict is challenged, we will not invade the province of the jury to weigh the evidence or to assess the credibility of witnesses. We will sustain an award of damages if it is within the range of the evidence presented to the trier of fact.

3

*City of Grand Forks v. Hendon/DDRC/BP, LLC*, 2006 ND 116, ¶ 8, 715 N.W.2d 145 (cleaned up).

[¶10] Juliuson cited the *Hendon* case in his appellate brief. He argues on appeal that, under the standard in *Hendon*, we should reverse and remand for a new trial. Because Juliuson cites the legal standard for insufficient evidence, we will review this claim under that rule of law.

[¶11] To resolve a claim challenging the sufficiency of evidence, this Court has stated:

> A losing party cannot, after a civil jury trial, raise the issue of sufficiency of the evidence for the first time to this Court. This serves two well-established principles: (1) we no longer decide factual issues de novo, and (2) we do not reweigh conflicts in the evidence or reassess the credibility of witnesses. The trial court and the jury had the benefit of observing the evidence and witnesses at trial. The trial court is also in the best position to decide a question regarding the sufficiency of the evidence. Therefore, before addressing the issue of sufficiency of the evidence to support a jury verdict, we require a losing party to move for judgment as a matter of law under N.D.R.Civ.P. 50, or for a new trial under N.D.R.Civ.P. 59.

*Griggs v. Fisher*, 2006 ND 255, ¶ 8, 725 N.W.2d 201 (cleaned up). Juliuson made a Rule 50 motion but did not make a motion for a new trial. *See Hendon*, 2006 ND 116, ¶ 6 (stating the party moved for a new trial, "alleging that the jury's verdict was insufficient and not supported by the evidence"). Juliuson's motion was "for a directed verdict just on the issue of liability . . . ." Therefore, while Juliuson separates the issues on appeal, his Rule 50 motion generally related to Johnson's alleged breach of contract. We consider Juliuson's sufficiency of evidence claim in that context.

B

[¶12] Juliuson argues the district court erred by failing to grant his N.D.R.Civ.P. 50 motion, failing to conclude the lease did not renew as a matter of law, and

4

failing to conclude Johnson did not violate the right of first refusal as a matter of law.

[¶13] This Court's standard of review for denial of a motion for judgment as a matter of law is well established:

> The trial court's decision on a motion brought under N.D.R.Civ.P. 50 to deny or grant judgment as a matter of law is based upon whether the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but one conclusion as to the verdict about which there can be no reasonable difference of opinion . . . . In determining if the evidence is sufficient to create an issue of fact, the trial court must view the evidence in the light most favorable to the non-moving party, and must accept the truth of the evidence presented by the non-moving party and the truth of all reasonable inferences from that evidence which support the verdict. The trial court's decision on a motion for judgment as a matter of law is fully reviewable on appeal.

*Albrecht v. Metro Area Ambulance*, 2001 ND 61, ¶ 10, 623 N.W.2d 367 (quoting *Symington v. Mayo*, 1999 ND 48, ¶ 4, 590 N.W.2d 450).

1

[¶14] Juliuson alleged in his complaint that Johnson breached the contract by not recognizing he renewed the lease. Juliuson later moved for summary judgment on the claim, arguing as a matter of law that he renewed the lease. The district court denied the motion and the issue proceeded to trial. The jury found Johnson did not breach Juliuson's right of first refusal or his option to renew. After trial Juliuson moved for judgment as a matter of law, again arguing that he exercised his option to renew the lease and that he did not waive that contractual right.

[¶15] Juliuson claims no evidence supports a finding he waived his option to renew the lease. Juliuson also argues Johnson's lease renewal offer was made in bad faith and, therefore, he was not required to accept it. When he did not accept the modified terms, Juliuson argues the lease renewed for an additional four years under the same terms as in the existing lease. Juliuson claims that, because

the lease renewed for another four years, Johnson breached the lease and Juliuson was entitled to recover damages or to preempt Johnson's land sale to Bjerke.

[¶16] Juliuson explained to the district court the basis for his post-trial Rule 50 motion, stating:

> And just to the extent that I haven't already, I am moving for a directed verdict just on the issue of liability, and that's pursuant to the *Drees Farming* case, the *Ehrman-Feist* case, and the *Hughes-Breitbach* case—I cited all of those in prior summary judgment briefings that stand for the proposition that the only term left for negotiations in these types of options to renew are the rent term, and that any other interpretation would nullify my client's right, as the tenant and the exclusive holder, of the option to renew—it would render his right meaningless—and, alternatively, if the parties don't—and if the price term didn't renew automatically, then the Court is within its discretion to set a reasonable term.

[¶17] Juliuson's lease with Johnson contained an option to renew providing, "The Tenant shall have the option to renew this lease for an additional period of four (4) years, upon giving written notice thereof at leas[t] sixty (60) days prior to the termination of this lease. Such renewal shall be upon terms and conditions then to be agreed upon by the parties hereto." In *Drees Farming Ass'n v. Thompson*, 246 N.W.2d 883 (N.D. 1976), the parties' lease contained a renewal provision and a right of first refusal. *Id.* at 885. This Court held that the parties intended the "use of the wor[d] 'terms' used in the option provision in the 1971 lease to refer only to the annual rent of the renewal period." *Id.* at 886. This Court went on to state, "To hold otherwise would make the option of renewal meaningless—the privilege of the option to renew, instead of being with the tenant where it clearly belongs, would be with the landlord since he could easily demand prohibitive conditions which would make the option to renew worthless and of no effect." *Id.* In *Hughes Realty Co. v. Breitbach*, 98 N.W.2d 374 (N.D. 1959), the parties entered into a lease that contained a renewal provision. *Id.* at 375. This Court stated, "Under this renewal option, the tenant has the right to renew at the same rental. It is only when the parties can agree that conditions at the time of renewal

demand a different rental rate that the rent may be adjusted." *Id.* at 378. In *Ehrman v. Feist*, 1997 ND 180, 568 N.W.2d 747, this Court stated, "When parties have agreed to agree on a price, a court can fix a reasonable price." *Id.* ¶ 11.

[¶18] Juliuson claims the rationales in the cited cases apply here. We disagree. This case differs from the cases cited by Juliuson because Johnson alleged, and the jury was instructed to consider, whether Juliuson waived his option to renew. The jury was instructed on waiver as follows:

WAIVER

"Waiver" is the voluntary and intentional relinquishment or abandonment of a known, existing right, advantage, benefit, claim, or privilege, which, except for the waiver, the party would have enjoyed. The voluntary and intentional relinquishment or abandonment may be shown by express language, by agreement, or by acts or conduct from which the intention to waive may be inferred. Those acts or that conduct may involve neglect or failure to act, when affirmative action is required, that [led] the other party reasonably to believe that it was the party's intention so to waive.

[¶19] After reviewing the record, evidence exists supporting a finding that Juliuson may have exercised his option to renew the lease, but also that he may have waived the right to renew. The record shows that in July 2021 Juliuson stated:

I would like to cash rent the 3 quarters for a 2 year period which will give me the additional time to try and get things in order to be able to purchase land. I would need to find a[n] investor which I have somewhat of a line on but that party needs time to arrange things as well. Like I say, it would be hard to watch this land go up for sale and sold and watch my 37 years of farming it go away. I'll make every effort to pursue the purchase but with the horrible crop this year I am asking for time. Here is what I'd do for rent. Currently I am paying $13,200 per quarter. J[uliuson] would pay $15,400 for a new 2 year contract.

In October 2021, Juliuson sent an email exercising his right to renew the lease. In November 2021, Johnson responded to the email by proposing new lease terms.

Juliuson failed to negotiate any further terms or formally accept the new lease. Juliuson proceeded to till the land in anticipation of farming it. He later offered to purchase the property, which Johnson argues waived Juliuson's right to renew the lease because one cannot lease and own property at the same time.

[¶20] Section 9-03-20, N.D.C.C., states, "Performance of the conditions of a proposal, or the acceptance of the consideration offered with a proposal, is an acceptance of the proposal." Juliuson's tilling the land provided evidence the jury could have concluded constituted acceptance of Johnson's proposed lease terms. Juliuson claimed he "tilled the Property, entered futures contracts, and proceeded as if he was going to farm the Property in 2022." Despite this, Juliuson rejected Johnson's proposed changes to the lease, which he described as "ludicrous." Juliuson now argues he was not required to accept them. This evidence presented conflicting facts on whether Johnson breached the option to renew. Those conflicting facts were for the jury to resolve. As a result, the district court did not err in denying Juliuson's Rule 50 motion for judgment as a matter of law regarding his claimed right to renew the lease.

2

[¶21] Juliuson claims the district court erred in denying his Rule 50 motion to preempt Johnson's sale of the property to Bjerke. He argues, "[b]ecause the Lease renewed for an additional four-year term, [Juliuson] has the right to preempt the sale of the Property to Bjerke Holdings."

[¶22] Juliuson's ability to succeed on this issue depends on him succeeding on his claim the lease renewed. Because we reject the renewal claim, Juliuson necessarily fails on the right of first refusal claim as he has presented it here. Therefore, the district court did not err in denying Juliuson's Rule 50 motion for judgment as a matter of law.

III

[¶23] Juliuson argues the district court abused its discretion by dismissing his claim against Johnson and Bjerke for specific performance. He argues specific

8

performance is proper when the claim is for a transfer of real property, and he requested the court to compel specific performance of his options of first refusal or to purchase on the same terms as those offered by Bjerke. He also argues that the court misapplied N.D.C.C. § 32-04-09 regarding specific performance, and that Bjerke cannot defeat Juliuson receiving specific performance by claiming the protection of a bona fide good faith purchaser for value.

[¶24] This Court reviews an appeal from the denial of specific performance under abuse of discretion. *Dale Exploration, LLC v. Hiepler*, 2018 ND 271, ¶ 9, 920 N.W.2d 750. "A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law." *Id*.

[¶25] Section 32-04-09, N.D.C.C., states, "It is to be presumed that the breach of an agreement to transfer real property cannot be relieved adequately by pecuniary compensation and that the breach of an agreement to transfer personal property can be thus relieved." The predicate to applying N.D.C.C. § 32-04-09 is an underlying "breach of an agreement." The jury here found no breach of contract, either for renewal of the lease or the right of first refusal. Without a breach, it is unnecessary for us to determine whether specific performance was an appropriate remedy for a breach of contract that the jury found did not occur.

IV

[¶26] Juliuson argues the district court erred in granting Johnson's Rule 50 motion for judgment as a matter of law by dismissing his claims for breach of implied covenant of good faith and fair dealing and deceit. Juliuson argues these issues together, despite them being distinct legal claims which requires separate analysis. We consider them separately below under the standard of review in paragraph 13 above.

A

[¶27] Juliuson argues the district court erred in dismissing his claim for breach of the implied covenant of good faith and fair dealing. He inconsistently argued

that this claim was both an independent ground for proving a breach of contract and a tort. The court treated the claim as a breach of contract and refused to separately instruct the jury on a duty of good faith and fair dealing.

[¶28] We start by making clear that this Court recognizes a tort-based cause of action for breach of the implied covenant of good faith and fair dealing in insurance contracts. *Smith v. American Family Mut. Ins. Co.,* 294 N.W.2d 751, 756 (N.D. 1980). That tort arises from the insurer's duty to act fairly and in good faith in handling claims, which is deemed to be imposed by law rather than by terms of the contract of insurance. *Id.* In *Seifert v. Farmers Union Mut. Ins. Co.,* 497 N.W.2d 694, 697 (N.D. 1993), we explicitly stated that North Dakota law provides for a bad-faith action in tort for breach of the implied covenant of good faith and fair dealing in an insurance policy. *See also Dalan v. Paracelsus Healthcare Corp. of North Dakota, Inc.,* 2002 ND 46, ¶ 11, 640 N.W.2d 726 ("In North Dakota the doctrine of an implied covenant of good faith and fair dealing has only been applied to insurance contracts."); *Cavendish Farms, Inc. v. Mathiason Farms, Inc.,* 2010 ND 236, ¶ 7, 792 N.W.2d 500 ("Cavendish relies upon cases acknowledging that a tort-based remedy for breach of an implied covenant of good faith and fair dealing has only been applied in this state to insurance contracts, not general commercial contracts. *See, e.g., Dalan v. Paracelsus Healthcare Corp.,* 2002 ND 46, ¶ 11, 640 N.W.2d 726.").

[¶29] Juliuson acknowledges that, "[w]hile this Court has not yet applied the doctrine of an implied covenant of good faith and fair dealing outside the context of insurance contracts," he argues "the facts here highlight why extending the doctrine makes sense."

[¶30] We have declined, and continue declining, to extend the tort claim beyond the insured-insurer relationship. *See Dalan,* 2002 ND 46; *Cavendish,* 2010 ND 236, *supra*.

[¶31] Under contract law, a party generally is not liable for an intentional breach of contract unless the breach is accompanied by an independent tort. *Pioneer Fuels, Inc. v. Montana-Dakota Utilities Co., a Div. of MDU Resources Group, Inc.,* 474 N.W.2d 706, 710 (N.D. 1991). North Dakota law establishes that a breach of

contract, even if intentional, malicious, or in bad faith, does not transform a contract action into a tort claim. *Id*. Rather, an independent action in tort may exist if the breach is accompanied by independent tortious conduct. *Id*.

[¶32] The district court refused to separately instruct the jury on a claim for breach of the covenant of good faith and fair dealing because no separate tortious conduct was shown. The court concluded the claim therefore was merely part of the breach of contract claim. Based on our precedent and the facts of this case, the court did not err by granting Johnson's Rule 50 motion and by not separately instructing the jury on a claim for breach of the implied covenant of good faith and fair dealing.

B

[¶33] Juliuson claims the district court erred granting Johnson's Rule 50 motion dismissing his deceit claim.

[¶34] Juliuson's deceit claim alleged the following:

Defendants have deceived [Juliuson] by suppressing facts they were bound to disclose based on their actual knowledge of the Lease. More specifically, Defendants failed to disclose, inter alia, the existence of a bon[a] fide offer to purchase the Property from a responsible offeror; the name and address of the offeror; the price being offered, including all terms of the offer; and the proposed closing date, all in violation of [Juliuson]'s right of first refusal under the Lease, and all proximately causing [Juliuson] damage in an amount to be proven at trial, together with interest as allowed by law, costs and disbursements, and any other and further relief the Court deems equitable and just.

[¶35] Johnson filed a N.D.R.Civ.P. 50 motion arguing for dismissal of the deceit claim. The district court stated, "I anticipate granting a motion with respect to the deceit because there's no independent damages for deceit." The court subsequently granted Johnson's motion because "the plaintiff has not met the obligation to present sufficient competent evidence for this deceit issue to go to the jury."

11

[¶36] Deceit is a tort claim under N.D.C.C. § 9-10-02. Like we explained above, a contracting party generally is not liable for an intentional breach of contract unless the breach is accompanied by an independent tort. *Pioneer Fuels*, 474 N.W.2d at 710-11. We explained in the context of punitive damages the need for an underlying tort:

> Tortious conduct must exist independently of the breach of contract and there must be proof of actual damages resulting from the independent tort. The independent tort must be separate and distinct from the breach of the contract. While the intentional tort may occur at the time of and in connection with the breach, or may arise out of the same transaction, it is not committed merely by breaching the contract, even if such act is intentional. If it appears that the tort claim is only an alternative theory and a court could not properly enter judgment for compensatory judgment on both the contract and tort theories without granting double recovery, punitive damages should not be awarded. The general rule against allowing punitive damages in a breach of contract case applies, even though a claim is made that the breach was unjustified, malicious, capricious, or willful. A breach of contract even if intentional, malicious, or in bad faith, is not enough to convert a contract action into a tort action. If the alleged obligation to do or not to do something that was breached could not have existed but for a manifested intent of the parties to a contract, then contract law should be the *only* theory upon which liability would be imposed.

*Id.* at 710 (emphasis in original) (cleaned up). A breach of contract, even if intentional, malicious, or in bad faith, does not turn a breach of contract claim into a tort claim absent proof of independent tortious conduct. *Id*. *See also Hay v. Dahle*, 386 N.W.2d 808, 811 (Minn. 1986) ("A breach of contract even if intentional, malicious, or in bad faith, is not enough to convert a contract action into a tort action.").

[¶37] Juliuson's breach of contract claim against Johnson was based on the same conduct and actions he used to support his deceit claim. The district court therefore did not err granting Johnson's Rule 50 motion dismissing the deceit

claim because it was not supported by sufficient competent evidence of an independent tort.

V

[¶38] The district court did not err denying Juliuson's Rule 50 motion for judgment as a matter of law regarding his claimed right to renew the lease and his subsequent claim that he preempted Johnson's sale of the property to Bjerke. The court did not err in dismissing Juliuson's claim for specific performance. Based on our precedent and the facts of this case, the district court did not err by granting Johnson's Rule 50 motion regarding claims for breach of the implied covenant of good faith and fair dealing and deceit claim. The district court's judgment dismissing Juliuson's claims with prejudice is affirmed.

[¶39] Jon J. Jensen, C.J.
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte
      Douglas A. Bahr